So with that, we'll hear argument first in number 20-2273, Jefferies LLC v. Gegeheimer. Mr. Pope. Mr. Pope. Sorry, Your Honor, I didn't get the mute. We can hear you now. Yes. Good morning, and may it please the court. Arbitration plays a vital role in providing a forum that serves as an alternative to the traditional judicial one for the resolution of private disputes. Arbitration may not, however, serve as a backdoor to remedies not available in a court of law. This is precisely what happened here and why this court must reverse the judgment of the court below. This appeal involves the intersection of three well-defined policies, deference to arbitration and its narrow but crucial exceptions, New York's mutually exclusive remedy rule for liquidated damages clause, and New York's public policy protecting and encouraging employee mobility. The willingness to defer to arbitration awards contains two crucial exceptions, that an arbitrator may not manifestly disregard well-established principles of law, and that an arbitration award may not violate public policy. The arbitration panel in this case manifestly disregarded New York's mutually exclusive remedy rule. This rule avoids a contractual provision for liquidated damages when the contracting party also reserves to itself the right to seek actual damages for the same contractual breach. The contract here... What's your principle? Let's touch that. I don't know if my minute is up. What's your principle authority for that rule and that will be in effect in the present day today? Well, your honor, this court in the US Fidelity case in 2004 said that that was black letter law and that particular case has been cited 30 times since for that principle. So I think it's well-established. You can go back in time. This court said the same thing in 1972 in the Walter E. Heller case. And the principle case that was discussed during the arbitration was a New York case, JARRO, J-A-R-R-O, which is probably the best instance in which the rule has been applied. But you know, excuse me, this is Judge Lynch. Wouldn't the most significant authority be New York state law, not what this court has said about New York state law? That's correct, your honor. And that's why the JARRO case, which is a New York state case. Yeah, but it's a New York state court. Excuse me, it's an appellate division case. And in that sense, it's not even binding on us, let alone on arbitrators. It's evidence of what the New York Court of Appeals might do. And hasn't the New York Court of Appeals, for example, in J.M.D. Holding in 2005, suggested that the balance is changing with respect to the balance between freedom of contract and avoiding penalties via, you know, invalidating some liquidated damages clauses? Your honor, in J.M.D. Holdings, the New York Court of Appeals said that certain principles surrounding liquidated damages are in fact evolving. For instance, how it's measured, whether or not an amount of liquidated damages crosses the line between penalty and compensation. As you had heard before. We're not really here to decide what the law kind of is in New York, or what's the best view of what the law is in New York. The question is whether the arbitrators kind of spit in the eye of known established law, and whether there is any colorable justification for arbitrators to believe, even if we don't, that New York law is different than what you're saying it is, or is evolving to be different than what you say it is. Isn't that what the standard is? Well, your honor, I don't think the standard is that arbitrators can decide that New York law is evolving and they can- Oh, really? Really? I'm sorry, let's back up. Excuse me, let's back up. Is the standard not whether there is any colorable justification for the panel's decision? It is whether or not there's a colorful justification for them avoiding a well-established and well-defined principle of New York law. Was there a reason why- No, no, no, no, no, no, excuse me, excuse me. There is no colorable justification for avoiding what is clear and plain and absolute. But the question is whether a reasonable lawyer, a reasonable judge, might colorably take the position that New York law is changing, and that a 1967 appellate term case is not quite as persuasive as it used to be. Why is that not a colorable position for an arbitrator to take? Well, your honor, because that is isolating one citation that was made, and there were many more citations made, and that is ignoring a much larger body of case law that is stated within that case itself and within all the other cases that were cited to the arbitrators that say that this is a consistent and well-established principle of law. In fact, in the GFI Brokers case, your honor, you wrote both on the Mutually Exclusive Remedy Rule and on some of these changes, and made it clear in the 2008 opinion you wrote in that case that the Mutually Exclusive Remedy Law is clear, black-letter, well-established, but said in 2009 that these other- Yeah, well, with all due respect to the distinguished district judge who decided that case, that also is one judge's opinion. Are you telling me that, for example, if a lawyer came into court and made the argument that the arbitrators made, the lawyer could be sanctioned for taking a position for which there is no colorable justification? I don't think he has to be, has to take a sanctionable position, your honor, but he would have a position that could not be successful under any circumstances. Well, maybe it wouldn't be successful, but wouldn't it be a colorable argument? No, your honor, it would not be a colorable argument with regard to what the state of law is. It would have to be framed, for Rule 11 purposes, as an argument for changing the law, which, of course, is a way to avoid sanctions. Well, then it couldn't be made in this court, right, because we have no authority to change New York law. So if this was made in a federal court, it would be sanctionable because it would be an argument for changing the law and not an argument about how we should think the New York courts are likely to apply this rule. It just seems to me, look, if you guys wanted to have a punctilious application of law and to have this court decide what the law is, you have an option to do that. But if you choose to go to arbitration, you are subjecting yourself to the possibility that you don't have the right to have us review de novo what the arbitrators do. The question is whether there is some colorable justification. After all, remember, this is not an exception that exists in the Federal Arbitration Act. It's something that this court made up and that the United States Supreme Court has suggested might not even be law. Well, Your Honor, it might not be law, and if that is the view the Supreme Court wants to take, that needs to come up in another case. We know that this is an available method for review of arbitration awards, and I think that the authorities we have provided to you, both state and federal, show that there is not only a well-established and unwavering rule here, but there's never been a case that has gone the other way, where some state court has said, thank you, where some state court has said that the presence of these two remedies in one contract allows, as Jeffrey's argued, that they can take the option for liquidated damages in lieu of having to follow the rule of the court, which is liquidated damages, are then void, and therefore, it becomes a situation where the contract itself no longer supports what the arbitrators have done. They don't have the authority to make that remedy if this is, in fact, a void provision, because they could only draw their essence from the contract itself. Your Honors, I reserve time for rebuttal, and I believe I'm just about at the end of this time, so if there aren't any other questions, I'll rest and come back on rebuttal. Thank you, Counsel. We'll hear next from Mr. Shapron. Yes, good morning, Your Honors. Andrew Shapron for the Apo Lee. May it please the Court. In this case, the district court properly found that the three arbitrator panel did not manifestly disregard the law when they unanimously enforced the liquidated damages agreement that Mr. Gagenheimer and Jeffries had agreed to with the advice of counsel. Now, unable to meet the stringent manifest disregard standard for vacaner, Gagenheimer, in his briefing, has, in many ways, abandoned it. His briefs read like merits briefs, even citing numerous cases and articles that did not exist when the arbitrators issued their award, and numerous others that were never presented to the arbitrators. In his reply, especially, Gagenheimer, perhaps realizing he cannot satisfy the manifest disregard standard, shifted his entire argument to public policy, arguing this court must review the arbitrator's arbitration award de novo to ensure it does not violate public policy. But, and as I think you've acknowledged in your questions, that is not this court's role, and that's because of the national public policy in favor of arbitration that's pronounced by Congress through the Federal Arbitration Act. And that means, as you've acknowledged, that you're limited here today to the very stringent standard for review on manifest disregard for the law, which, of course, is a non-statutory ground that this circuit does recognize, but that the Supreme Court has, at least, questioned the validity of. And that goes to the standard that was just discussed. Remind me of the name of the Supreme Court case, please. It was Hall Street, the 2008 case. I see, okay, thank you. Now, I want to, and just be clear, also, this public policy argument, and I don't wanna spend a lot of time on it because of the manifest disregard argument, and I think is the applicable one, but it's frankly been waived. Mr. Gagenheimer did not make this public policy argument to the district court. The district court applied the manifest disregard standard as it should. Now, certainly, Mr. Gagenheimer used the words public policy in his underlying petition, but it was always part of his manifest disregard argument. He never argued before the district court, as he does now, that the court should undertake a de novo review to determine whether or not public policy has been violated. And of course, Judge Buchwald didn't address this public policy argument because it wasn't made. So that point has been made. So what he's left with has been waived, I'm sorry. So what Mr. Gagenheimer's left with is the manifest disregard of the law standard. And the court's review under that standard must be based solely on what evidence and arguments were presented to the arbitrators before they rendered their decision. And the question is whether, excuse me, I take it that that includes case law, that if the case law is not brought to the attention of the arbitrators, we don't take it into account. Am I making that up or? No, no, no, that's correct. You cannot manifestly disregard law that you're not aware of. And it's incumbent on the parties to bring all of the authority they want the arbitrators to consider to their attention. And Judge Buchwald actually very carefully analyzed that and analyzed the specific cases that Mr. Gagenheimer brought to the panel's attention on this exclusive remedy rule and summarized them and found specifically with the Jaro case that it was a 50-year-old appellate division case and that there was other authority cited to the panel. I think it was an appellate term case, which isn't even an appellate division, but still, I don't know. And Jeffries, of course, argued to the panel, this is not a per se rule. There is a shift in the law in New York that is now favoring the enforcement of the liquidated damages clause. We pointed out repeatedly that the burden was on Mr. Gagenheimer to prove the invalidity of the clause. We cited GFI brokers and other cases to show the panel the shift in the law. And the district court held, again, she didn't say the panel's right or wrong, but she held that that shift in the law could provide more than a colorable basis for the panel to discount the strength of Jaro as controlling authority. And excuse me, Mr. Shepherd, and this is Judge Lynch. Did the arbitration panel discuss the Jaro case? In its award, it did not. It did not. The arbitrators issued an award. They addressed various parts of their analysis, but they did not specifically address the Jaro decision. Does that matter? I mean, is that, I don't know which way it cuts in a sense. If they discussed it and said, we don't care about this, that would look like manifest disregard. If they don't discuss it, though, after it was cited to them, is that any problem for your argument? I don't believe so. Excuse me, did they make an argument, for example, that, or did they adopt your argument that New York law is changing or anything of that sort? It's unclear. They did not specifically say so. And this was actually an issue that was more directly briefed before the district court. And we cited numerous cases there that said, you cannot hold it against an arbitration panel just because they specifically did not discuss an issue in an award. Again, so long as the court can infer a colorable basis for the decision, then the award must be confirmed. And on that note, and I think this was important, we also cited to the arbitrators the In Re First Union Baptist Church of the Bronx case. And in that case, despite a bankruptcy court's prior finding that the liquidated damages provision at issue gave the contracting party the choice between actual and liquidated damages, the district court overruled the bankruptcy court and held that the liquidated damage provision at issue there was neither a penalty nor unenforceable. And this was 2018. Now, during phase one of the arbitration, Mr. Gagenheimer had actually cited that bankruptcy court decision as authority, as support for his exclusive remedies argument. So when we cited that it was overruled later, the panel was aware that a case that Gagenheimer had relied upon to support his argument had been specifically overturned. And we think that that alone is sufficient to defeat Gagenheimer's manifest disregard argument given the stringency of the standard. So given that both parties presented conflicting authority, the cases relied upon by Gagenheimer were factually distinguishable, and Judge Buchwald noted that in her opinion. And in the absence of any evidence that the panel believed a per se rule of law applied, but refused to enforce it, there was more than a barely colorful justification for the panel's decision. And the same is true on the restrictive covenant argument that Mr. Gagenheimer has raised, the other argument he has raised on appeal. The only case that Mr. Gagenheimer cited to the panel, I shouldn't say the only, but the primary case was BDO Sideman, which of course concerns a traditional unilateral restrictive covenant imposed on employees that restricts their ability to compete post-employment. And here, of course, the provision at issue only addressed Mr. Gagenheimer's failure to join Jeffries by a certain date. And the district court rejected the manifest disregard argument regarding BDO Sideman, stating what we think is a somewhat obvious factual distinction, that BDO Sideman involved a post-employment covenant between an employee and his former employer, and not a pre-employment contractual provision to begin work on a date certain. And the district court correctly held that Gagenheimer could not prevail on his argument that the panel manifestly disregarded New York law, because he failed to cite a single case to the panel in which a covenant between an employee and his prospective employer has been considered under the same standard as BDO Sideman. Thank you. And this court has confirmed multiple times that if facts are distinguishable, then to support a distinction between cases, there can be no manifest disregard. In sum, your honors, the real public policy in that issue here is the policy in favor of arbitration. Congress has made it clear, the Supreme Court has made it clear. And in this case, Gagenheimer and really Credit Suisse has dragged the parties through nearly five years of legal proceedings in a relatively simple breach of contract case. And the parties have far outspent the value of the case litigating. And that result, of course, is the opposite of the speedy and efficient resolution of disputes that arbitration is supposed to achieve and which underpins the national public policy in favor of arbitration. So the award should be confirmed and Jeffrey's awarded the attorney's fees that has incurred on appeal. Thank you. Thank you, counsel. Mr. Pope, you have two minutes for rebuttal. Thank you, your honor. I, there are several problems with the argument that's been brought by Jeffrey's, but let me focus on a couple of points. One is whether or not there is a well-established rule of law is something that the court has to independently determine because before there can be manifest disregard, there has to be a well-established rule of law. I believe we have presented the cases that demonstrate that with regard to both the rules of law that are in our brief. Secondly, the question of manifest disregard is then whether or not the panel has been apprised of this rule of law, adequately apprised of it, and then has not followed it. And we've showed that they've been adequately apprised of it that was the case and they did not follow it. And inexplicably, they didn't say why they didn't follow it after making quite a point in the point of questioning about the fact that it applied and that it was an issue. And disturbingly, the chair at one point when offered a compendium of cases so that they can study what the rule is, the compendium of the cases cited to him said, and I'm quoting from the appendix of 515, are we gonna read those cases? I don't think we're gonna read those cases. So it seems like a lot of work for, I mean, yeah. And what the other panelists said, I would say forget it. So there is strong evidence that the panel was in fact disregarding the law involved. And this court, the fact is that Jeffries at the same time also was in agreement that there was a mutual exclusivity between the two rules. They simply represented to the panel and I believe inaccurately that New York law allowed them to choose which of the remedies they got to do. New York law is clear, they don't get to choose the liquidated damages remedy is void. And I would just like to underline that the competitive issue that we have as a second one, whether or not employee mobility is extraordinarily important public policy. And while we haven't had a lot of time on it, this argument, I urge the panel to go back over the briefs because the implications of affirming this particular clause and this particular method of operating that Jeffries does are just frightening for what is gonna happen to the marketplace, not just for investment bankers, but for every other type of employee moving between firms. Thank you. Thank you both. We'll take the matter under advisement.